[No. 702.]

## THE STATE OF NEVADA, RESPONDENT, *v.* JOHN MYATT, APPELLANT.

EVIDENCE SUFFICIENT TO CONSTITUTE MURDER.—The testimony in this case shows that there was not only some evidence tending to show that defendant shot deceased, but that there was considerable evidence, all pointing directly to the defendant as the guilty party.

WHEN JUDGMENT MAY BE AFFIRMED WITHOUT ARGUMENT.—Where the appellant fails to appear and file any points or authorities in a criminal case, the Supreme Court may affirm the judgment appealed from, without examining the assignment of errors in the record.

APPEAL from the District Court of the Ninth Judicial District, Elko County.

Defendant was indicted for the murder of James Morgan by shooting him with a pistol, on the 21st day of December, 1873, at the town of Elko, in Elko County. He was tried March 28, 1874, and found guilty of murder in the second degree, and sentenced to imprisonment in the State prison at hard labor for the term of twelve years. This appeal is from the judgment.

There was no appearance upon the part of counsel for appellant in the Supreme Court.

The facts considered are fully stated in the opinion.

*F. M. Smith,* for Appellant.

*J. R. Kittrell, Attorney-General,* for Respondent.

By the Court, HAWLEY, C. J.:

Appellant was convicted of murder in the second degree. In the assignment of errors it is claimed that "there is no

evidence showing, or tending to show, that the defendant shot or killed James Morgan." The evidence is circumstantial. James Morgan (deceased) was shot on the night of December 21, 1873, with a pistol-ball, which penetrated through the door of his room, at No. 4 adobe row, in the town of Elko. The circumstances tending to prove the guilt of Myatt (defendant), briefly stated, are as follows: On the night of the homicide the parties were both intoxicated. Between ten and eleven o'clock, they had a difficulty at Ide's saloon. Morgan pulled out some money and said, "I have got lots of money." A bystander knocked the money out of his hand and it dropped on the floor. Morgan and Myatt commenced picking it up, and scrambling for it; each picked up some, when Morgan told Myatt "that he wanted him to give him his money;" then Myatt said, "he would not give it to him," that "he had two dollars and he was going to keep it." Morgan said "he did not want any —— —— (using an opprobrious name and epithet) to keep his money." Then Myatt struck him. The parties were separated, and Myatt then gave Morgan the money. Myatt, after this difficulty, alluding to Morgan, said, "I will kill that, or any other —— —— (using the same opprobrious name and epithet) that says I kept his money." Shortly after this, Myatt proposed to Morgan to go home, and promised to go with him. They left this saloon together and went to the Bank Exchange saloon, where they were heard angrily talking about money matters. At fifteen minutes before eleven o'clock the parties were at Bischoff's saloon, where they drank liquor and had some cigars, Morgan paying for both. They remained but a few minutes and left the saloon together, and were heard quarreling outside on the porch. This saloon is about eighty feet from No. 4 adobe row. The persons who were at this saloon, about ten minutes after Myatt and Morgan left, heard a pistol-shot in the direction that Morgan was killed, and heard one or two cries or groans, one witness recognizing the exclamation, Oh! A man named May, living with Morgan at No. 4 adobe row, was aroused from sleep

between eleven and twelve o'clock; he thought something shook the house as if something fell down; got up and found Morgan in a sitting posture and tried to put him to bed, but Morgan was too heavy and he could not do it. May did not know, at this time, that Morgan was shot—thought he was drunk—put a pillow under his head and covered him with a pair of blankets and went away from the house, leaving Morgan lying on the floor.  A woman living in No. 5 adobe row, was in bed; a little after eleven o'clock she heard two persons come to the door of No. 4.  She heard one man go inside the house and one man remained outside; she heard the man outside call to the man inside, "Jim! Jim! come out here;" at the same time using bad language.  The man outside then said, "Jim, if you don't come out I will shoot right through the door."  Then a shot was fired, and she heard a man fall in the room and exclaim, "Oh Lord God! Murder!"  The man outside then ran away, and she heard May, after this, get up, and heard him trying to get Jim up, and also heard May when he left the house.

The next morning May returned and found Morgan lying in the same position that he had left him.  After cooking breakfast in the same room where the body lay, and failing in his efforts to arouse the deceased, he called in a friend, who discovered that Morgan was dead.  The coroner was then called, and he found the deceased lying on his back, his feet next the door, about on a line with the doorway. The door opened directly into the room where he was lying. A pistol-ball had been shot through the edge of the door at the opening of the same; the hole made by the ball appeared to be a fresh one; it also appeared that a ball going through the door at this point would have been likely to pass through or hit the body of deceased—if standing up and in range—at the place where the wound was made. The physician found a wound made by a pistol-ball, which, in his judgment, was sufficient, and would be likely to produce death.  Myatt was arrested the morning after the homicide.  On the day of his arrest, he said to the officers

having him in charge, "that if he did kill Jim Morgan he did not know it." In his conversation with the officers he used this expression relative to the killing of Morgan: "I was drunk; and if I did do it I have forgotten it." Sheriff Scott asked Myatt "if he shot Jim Morgan." Myatt replied, "I don't know whether I shot him or not; I can't tell whether I shot Morgan or not; if I did, I did not intend to." Myatt stated that he took his pistol down town with him that night and said he did not know what made him take it. The pistol was found in Myatt's house with two shots out of it, and had the appearance of having been recently discharged. Myatt at one time said that he fired the pistol off the morning previous to his arrest at an Indian dog; at another time he said he had shot the pistol off at a rabbit. He told the sheriff and other persons that he went home with Morgan and went into the house, staid a short time and went home. In his testimony at the trial he denied having gone to the house with Morgan, denied all knowledge of the killing of Morgan, and denied having made any of the statements as testified to by the officers. During the time of his confinement in the county jail, about ten days before his trial, he was caught in an attempt to saw off one of the iron bars at the window, which, if successful, would have enabled him to make his escape.

From this brief statement it will readily be seen that there was not only some evidence tending to show that defendant shot James Morgan, which was proper to be submitted to the jury, but that there was considerable evidence, all pointing directly to the defendant as the guilty party.

Numerous objections are specified in the assignment of errors, to the rulings of the court in excluding evidence and in giving and refusing certain instructions. There being no appearance on the part of the appellant, and no points and authorities being filed on his behalf, we do not feel called upon to notice the several objections thus made.

The statute provides that "judgment of affirmance may be granted without argument, if the appellant fail to appear." (Stat. 1861, p. 487, Sec. 484.) While we think

that the several objections are without merit, it must not be expected that when the appellant fails to appear, we will grope in darkness in search of some fancied error, in order to show that it is not sustained by the facts nor supported by the law.

The judgment of the district court is affirmed.